**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

LEESA J. CAPILLI,                         :
                                          :      Civil Action No. 04-5777
              Plaintiff,                  :
                                          :           **OPINION**
       v.                                 :
                                          :
WHITESELL CONSTRUCTION CO.,               :
                                          :
              Defendant.                  :

**Appearances:**

> Ellen M. McDowell, Esquire
> Elissa Westbrook Smith, Esquire
> McDowell Riga, P.C.
> 46 West Main Street
> Maple Shade, New Jersey 08052
>        Attorneys for Plaintiff

> Thomas J. Barton, Esquire
> Edward N. Yost, Esquire
> Drinker, Biddle & Reath, L.L.P.
> 105 College Road East, Suite 300
> P.O. Box 627
> Princeton, New Jersey 08542-0627
>        Attorneys for Defendant

**RODRIGUEZ**, Senior District Judge.

This matter comes before the Court on motion of Defendant for summary

judgment [10] and on cross-motion of Plaintiff for summary judgment [12].  Defendant

seeks summary judgment on all four counts of Plaintiff's Compaint.  Plaintiff seeks

summary judgment on her Family Medical Leave Act ("FMLA") interference claim.  For

the reasons stated below, Defendant's Motion for Summary Judgment will be granted in

part and denied in part and Plaintiff's Motion for Summary Judgment will be denied.

### BACKGROUND FACTS AND PROCEDURAL HISTORY

Plaintiff, Leesa J. Capilli ("Capilli"), began her employment with Defendant,

Whitesell Construction Company ("Whitesell"), on April 30, 2001,[1] as a mechanical

designer in its architectural engineering department.  (Def. Mot. for Summ. J., p. 4.)

Capilli was supervised by Bruce Schlegel ("Schlegel"), the Director of Architecture and

Engineering.  (Def. Mot. for Summ. J., p. 4.)

Whitesell contends that it was unhappy with Capilli's work-product and interaction

with Schlegel and other co-workers.  (Def. Mot. for Summ. J., p. 4.)  In October of 2001,

Schlegel met with Capilli to discuss his concerns with her job performance.  (Def. Mot.

for Summ. J., p. 4.)  These concerns were memorialized in a writing dated October 19,

2001.  (Def. Mot. for Summ. J., Exh. 3.)  Among Schlegel's concerns were Capilli's CAD

skills, negative attitude, work ethic, communication skills, productivity and absenteeism.

(Def. Mot. for Summ. J., Exh. 3.)

Whitesell also contends that its dissatisfaction with Capilli continued through her

performance appraisal for the period ending December 31, 2002.  (Def. Mot. for Summ.

---

[1] Capilli contends that she began working at Whitesell on May 5, 2001.  (Pl. Statement of Mat. Facts, ¶ 1.)  This distinction is not material to the analysis here.

J., p. 5.)  Despite being rated "good" for the period reviewed, Whitesell noted that

Capilli's quality of work, initiative and interpersonal relationships needed improvement.

(Def. Mot. for Summ. J., Exh. 5.)  In addition, Whitesell noted continued dissatisfaction

in a memorandum to her personnel file dated May 30, 2003.  (Def. Mot. for Summ. J.,

Exh. 6.)  This memorandum took issue with several areas of Capilli's job performance:

(1) being absent from a critical meeting; (2) lacking knowledge about the company's

CAD software; (3) reacting unprofessionally to criticism; and (4) corrupting her

computer's email software.  (Def. Mot. for Summ. J., Exh. 6.)

On July 31, 2003, Capilli sent Schlegel an email communication to inform him that

she needed to leave early on August 1, 2003.  (Pl. Statement of Mat. Facts, ¶ 8.)  Schlegel

responded that she should talk to him in person about the request and should inform him

of the status of her current projects.  (Pl. Statement of Mat. Facts, ¶ 8.)

In September of 2003, Capilli suffered from a viral infection in her lungs.

(Complaint, ¶ 6.)  She was out of work from September 27, 2003 until October 21, 2003.[2]

(Complaint, ¶ 6.)

In November of 2003, Whitesell had several other experiences with Capilli.  (Def.

Mot. for Summ. J., p. 6.)  First, she engaged in a loud telephone conversation, reacted

angrily when confronted and complained about the location of her workstation.  (Def.

---

[2]In her deposition, Capilli testified that she was able to return to work on October
22, 2003.  (Def. Mot. for Summ. J., p. 23; Capilli Tr. 333:21-24.)

Mot. for Summ. J., p. 6.)  The Whitesell employee who witnessed these events
memorialized her recollection in a memorandum.  (Def. Mot. for Summ. J., Exh. 7.)
Second, Capilli made disruptive remarks while criticizing Whitesell's newly selected
benefits provider at a required, company-wide annual meeting.  (Def. Mot. for Summ. J.,
p. 9.)  Following the meeting, Capilli had a run-in with three of her co-workers regarding
her remarks, wherein she stated in reference to Whitesell that "this company sucks" and
"our benefits suck".  (Def. Mot. for Summ. J., p. 10.)  Third, Capilli sought out Tim
Cahill, the Vice President of the Construction Department, to report her inability to retain
the services of one of his subordinates in the completion of a project.  (Def. Mot. for
Summ. J., p. 11.)  On that same day, Capilli, after being unable to locate the human
resources administrator, approached Schlegel to tell him that she would need time off for
surgery.  (Def. Mot. for Summ. J., p. 11.)

Finally, on November 21, 2003, Robert Richards ("Richards"), the President of
Whitesell called Capilli into his office and terminated her effective immediately.  (Def.
Mot. for Summ. J., p. 12.)  Richards conducted a review of the above, and could no
longer employ Capilli because of her negative attitude about the company, hostility
toward co-workers, and poor job performance.  (Def. Mot. for Summ. J., p. 12.)  Richards
denied, in response to Capilli's question, that the termination was related in any way to
her disability.  (Def. Mot. for Summ. J., p. 12.)  Moreover, Richards denied even having
knowledge of Capilli's need for surgery,  (Def. Mot. for Summ. J., p. 12-13), and Capilli

testified that he did not have knowledge, (Def. Mot. for Summ. J., p. 13; Capilli Tr. 304:13-305:7).

## DISCUSSION

### A.  Summary Judgment Standard

"Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law."  Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)); accord Fed. R. Civ. P. 56 (c).  Thus, this Court will enter summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56 (c).

An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  Id.  In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Initially, the moving party has the burden of demonstrating the absence of a

5

genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once

the moving party has met this burden, the nonmoving party must identify, by affidavits or

otherwise, specific facts showing that there is a genuine issue for trial.  Id.; Maidenbaum

v. Bally's Park Place, Inc., 870 F. Supp. 1254, 1258 (D.N.J. 1994).  Thus, to withstand a

properly supported motion for summary judgment, the nonmoving party must identify

specific facts and affirmative evidence that contradict those offered by the moving party.

Andersen, 477 U.S. at 256-57.  "A nonmoving party may not 'rest upon mere allegations,

general denials or . . . vague statements . . . .'" Trap Rock Indus., Inc. v. Local 825, Int'l

Union of Operating Eng'rs, 982 F.2d 884, 890 (3d Cir. 1992) (quoting Quiroga v. Hasbro,

Inc., 934 F.2d 497, 500 (3d Cir. 1991)).  Indeed,

> the plain language of Rule 56(c) mandates the entry of summary judgment,
> after adequate time for discovery and upon motion, against a party who fails
> to make a showing sufficient to establish the existence of an element
> essential to that party's case, and on which that party will bear the burden of
> proof at trial.

Celotex, 477 U.S. at 322.

In deciding the merits of a party's motion for summary judgment, the court's role

is not to evaluate the evidence and decide the truth of the matter, but to determine

whether there is a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

249 (1986).  Credibility determinations are the province of the factfinder.  Big Apple

BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

When ruling on cross-motions for summary judgment, the court must consider the

motions independently, <u>Williams v. Philadelphia House Auth.</u>, 834 F. Supp. 794, 797

(E.D. Pa. 1993), <u>aff'd</u>, 27 F.3d 560 (3d Cir. 1994), and view the evidence on each motion

in the light most favorable to the party opposing the motion. See <u>Matsushita Elec. Indus.</u>

<u>Co.</u>, 475 U.S. at 587.

**B.  Plaintiff's Retaliation Claim under the Family Medical Leave Act**

The Family Medical Leave Act ("FMLA") states that:

[i]t shall be unlawful for any employer to discharge or in any other manner
discriminate against any individual for opposing any practice made
unlawful by this subchapter.

29 U.S.C. § 2615(a)(2) (1993).  To establish a prima facie claim of retaliation for

requesting FMLA leave, a plaintiff must show that: (1) she engaged in protected activity;

(2) she suffered an adverse employment decision; and (3) the adverse decision was

causally related to the leave.  <u>Conoshenti v. Public Serv. Elec. & Gas Co.</u>, 364 F.3d 135,

146 (3d Cir. 2004).

**1. Whether Plaintiff requested FMLA leave**

Defendant argues that it is entitled to summary judgment because Plaintiff did not

engage in "protected activity" in that she never requested leave under the FMLA.  (Def.

Mot. for Summ. J., p. 16.)  Plaintiff argues that she is not required to specifically assert

her rights under the FMLA, rather, she need only state that leave is needed.  (Pl. Br., p.

19.)  Plaintiff is correct.

The Code of Federal Regulations states that:

7

> [a]n employee shall provide at least verbal notice sufficient to make the employer aware that the employee needs FMLA-qualifying leave, and the anticipated timing and duration of the leave. The employee need not expressly assert rights under the FMLA or even mention the FMLA, but may only that leave is needed for an expected birth or adoption, for example.

29 C.F.R. § 825.302(c) (2006). Therefore, "[t]o trigger the rights guaranteed under the FMLA, an employee need not actually mention the FMLA by name, "the critical question is whether the information imparted to the employer is sufficient to <u>reasonably apprise</u> it of the employee's request to take time off for a serious health condition." <u>Holpp v. Integrated Commc'ns Corp.</u>, Civ. No. 03-3383, 2005 WL 3479682, at *5 (D.N.J. December 20, 2005) (quoting <u>Brohm v. Jh Props.</u>, 149 F.3d 517, 523 (6th Cir. 1998)) (emphasis added). Moreover, 29 C.F.R. § 825.302(c) requires an employer to "inquire further of the employee if it is necessary to have more information about whether FMLA leave is being sought by the employee, and obtain the necessary details of the leave to be taken." 29 C.F.R. § 825.302(c) (2006).

Defendant's reliance on <u>Johnson v. Thru Point, Inc.</u>, 160 Fed. Appx. 159 (3d Cir. 2005) is misplaced.[3] In <u>Johnson</u>, the Third Circuit held that the plaintiff had not put his employer on notice of his need for health-related leave because he neither advised his

---

[3]Plaintiff suggests that "Defendant's reliance on this case is . . . questionable because the slip opinion states prominently on its face that the decision is 'Not Precedential.'" However, while it is true that the authority is not binding on this Court, it is highly persuasive in that it is a recent decision of a higher court. <u>See</u> City of Newark v. U.S. Dep't of Labor, 2 F.3d 31, 33 n.3 (3d Cir. 1993) (holding that while an unpublished decision lacks precedential authority, its analysis is "nonetheless consider[ed] persuasive").

employer of a medical condition nor provided it with an opportunity to discover it.  Id. at

162.  Moreover, the Court noted that rather than taking or requesting a leave of absence,

vacation, or sick leave, the plaintiff signaled to his employer his eagerness to work.  Id.

The court reasoned that "[t]o trigger the application of the FMLA, an employee must

provide his employer with notice that leave is necessary."  Id. (citing 29 C.F.R. §

825.303).

   Here, Plaintiff gave the following testimony at her deposition:

> Q. Tell me everything you can recall saying to [Schlegel] and him
> saying to you, and if you don't recall exact words, tell me that.
> A. I went into his office.  I apologized for leaving early.  I told him
> my doctor had prescribed prednisone and it started working
> immediately and I was feeling much better, and I would only be
> able to take that for a short period of time an hopefully that
> would do the trick; that's kind of the term I used – hopefully that
> would work.  I explained to him, I said, I know you've been
> patient with me, because of everything that's been happening,
> but I'm going to need to take time off.  I have to go see a
> surgeon for surgery.

(Dec. of Bruce Schlegel, Exh. 2–Capilli Tr., pp. 180:23-181:11) (emphasis added).

Because Plaintiff had taken a health-related absence several months earlier, and because

she referenced the need to seek medical attention, a reasonable jury could find that she

provided Defendant with sufficient notice that leave would be necessary.  At a minimum,

a reasonable jury could find that Plaintiff triggered Defendant's duty to inquire under 29

C.F.R. § 825.302(c).  Therefore, summary judgment on this ground is inappropriate.

**2.  Whether a causal link exists between the adverse employment decision and the leave**

Defendant argues that it is entitled to summary judgment because Plaintiff is unable to establish that the decision-maker, Richards, responsible for the alleged adverse employment action was aware of the Plaintiff's protected activity.  (Def. Mot. for Summ. J., p. 16.)  Plaintiff, on the other hand, argues that even if Richards did not know "of the particular fact of [her] latest leave request, [Defendant], in the person of . . . Schlegel, certainly did."  (Pl. Br., p. 20.)

The Third Circuit focuses on two main factors when determining whether the causal link necessary for retaliation exists: timing and evidence of ongoing antagonism. Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d Cir. 2000).  A plaintiff may not ordinarily satisfy her burden of proving causation simply by noting that the adverse employment action occurred after engaging in protected conduct.  Robinson v. City of Pittsburgh, 120 F.3d 1286, 1302 (3d Cir. 1997).  However, in Jalil v. Avdel Corp., 873 F.2d 701, 708 (3d Cir. 1989), the Third Circuit held that a plaintiff "demonstrated the causal link between the two by the circumstance that the discharge followed rapidly, only two days later, upon [the defendant's] receipt of notice of [the plaintiff's] EEOC claim."

Although Plaintiff fails to cite any authority for its proposition, the authority cited by the Defendant is distinguishable.  For example, in Sommers v. Vanguard Group, 380 F. Supp. 2d 680, 687 (E.D. Pa. 2005), the district court granted summary judgment in favor of the defendant and against the plaintiff on his FMLA retaliation claim because he

failed to produce any evidence of a causal connection between the adverse employment decision and the protected activity.  However, there, the adverse employment decision pre-dated the protected activity; therefore, any inference of retaliation by the jury would have been improper.  Id.  See also Holpp v. Integrated Commc'ns Corp., Civ. No. 03-3383, 2005 WL 3479682, at *9 (D.N.J. Dec. 15, 2005) (granting summary judgment in favor of defendant where no causal connected existed because the adverse employment decision, while not communicated to the plaintiff until the day she returned from protected leave, had been made almost four months earlier).

Moreover, in Conoshenti, while it is true that the Third Circuit affirmed the grant of summary judgment by the district court on the ground that the plaintiff could not establish causation, a superceding "Last Chance Agreement" ("LCA") was the operative document between the parties.  364 F.3d at 148.  The plaintiff conceded that a violation of the LCA "would be deemed automatic just cause and he would be fired."  Id.

Here, given the timing of the adverse employment decision, a reasonable jury may conclude that Richards knew more about Plaintiff's leave request than he let on during her termination meeting.  It is immaterial at this stage that Plaintiff finds Richards's pronouncement during the meeting believable.  It is solely within the province of the fact finder to determine credibility.  As the Third Circuit has stated:

> [w]e recognize that different inferences might be drawn from the evidence
> presented in the record.  On summary judgment, however, when viewing the
> sufficiency of the prima facie case, our role is not to act as fact finder.  Instead,
> we must consider the evidence taken in the light most favorable to the non-

11

movant and determine whether [the plaintiff] can show the causation require.

Abramson v. William Paterson College of New Jersey, 260 F.3d 265, 289 (3d Cir. 2001)

(quoting Farrell, 206 F.3d 271, 286).  While it may be close, given the deference afforded

a non-moving plaintiff in the summary judgment phase, summary judgment on this

ground is inappropriate.

### 3.  Whether there existed non-retaliatory reasons for the termination

Once a plaintiff has made a prima facie showing of retaliation under the FMLA,

the usual burden shifting analysis from McDonnell Douglas applies.  Weston v.

Pennsylvania, 251 F.3d 420, 432 (3d Cir. 2001) (citing Delli Santi v. CNA Ins. Co., 88

F.3d 192, 199 (3d Cir. 1996) (noting that the familiar McDonnell Douglas burden shifting

dichotomy applies to retaliation claims)).

Defendant proffers a number of non-discriminatory reasons for Plaintiff's

termination, including: (1) her performance; (2) her interaction with co-workers; and (3)

her job competence.  In addition, Plaintiff testified during her deposition that Schlegel

had been very patient and understanding.  (Def. Mot. for Summ. J., p. 18, Dec. of Bruce

Schlegel, Exh. 2–Capilli Tr., pp. 182, 187.)  Moreover, with regard to her second request

for leave, Plaintiff testified that Schlegel did not view it as a problem.  (Def. Mot. for

Summ. J., p. 18, Dec. of Bruce Schlegel, Exh. 2–Capilli Tr., pp. 187, 215-16; 289-90.)  In

response, Plaintiff argues that these reasons are pretext for discrimination because

Defendant should have questioned whether her behavior might have been related to her

12

illness.

The Third Circuit has found that in the absence of direct evidence of discrimination, "the proper inquiry is 'whether evidence of inconsistencies and implausibilities in the employer's proffered reasons for discharge reasonably <u>could</u> support an inference that the employer did not act for non-discriminatory reasons, not whether the evidence <u>necessarily</u> leads to [the] conclusion that the employer did act for discriminatory reasons.'" <u>Josey v. John R. Hollingsworth, Corp.</u>, 996 F.2d 632, 638 (3d Cir. 1993) (quoting <u>Chipollini v. Spencer Gifts, Inc.</u>, 814 F.2d 893, 900 (3d Cir. 1987) (further citation omitted)).  In addition, the timing of an employee's termination may be used to raise an inference that his employer's purported non-discriminatory reasons for dismissal are merely pretextual and, therefore, raise a genuine issue of material fact precluding summary judgment for the defendant.  <u>Id.</u> at 639.

As noted above, in this case, Defendant terminated Plaintiff less than forty-eight hours after she notified her supervisor that she was going to need to take leave for surgery.  Although slim, Plaintiff has made sufficient specific allegations such that a reasonable jury may believe the reasons given by Defendant were merely pretext. Therefore, because this Court examines the factual issues in the light most favorable to Plaintiff, summary judgment is inappropriate.  Accordingly, summary judgment on this ground will be denied.

**C. Plaintiff's Interference Claim under the FMLA**

Plaintiff raises, ostensibly for the first time, that Defendant is liable for interfering with her rights under the FMLA.  First, Defendant argues that Plaintiff may not raise this claim at this stage because she did not allege it in the Complaint.  Second, Defendant argues that if this Court finds that the claim was pled, she is unable to prove that she suffered an injury as a result of the interference and, therefore, she is not entitled to recover damages.  Each of these arguments will be addressed in turn.

**1.  Was interference properly pled**

Plaintiff argues that the Complaint fairly puts Defendant on notice, as required by FED. R. CIV. P. 8(a)(2), because it contains "a short and plain statement of the claim showing that the pleader is entitled to relief."  (Pl. Br., p. 6 (quoting FED. R. CIV. P. 8(a)(2) (1987).)  While it is true that "the Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits," Conley v. Gibson, 355 U.S. 41, 48 (1957), Plaintiff's Complaint speaks in terms of retaliation, rather than interference, or both.  Therefore, the Court will construe Plaintiff's cross-motion for summary judgment on this claim as a motion to amend.[4]

Leave to amend is to be "freely given when justice so requires."  FED. R. CIV. P.

---

[4]Plaintiff moves, in the alternative, for leave to file an amended complaint.  (Pl. Br., p. 6 n.4.)

15(a) (1993).  The Supreme Court has noted that:

> this mandate is to be heeded.  If the facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.  In the absence of any apparent or declared reason–such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.–the leave sought should, as the rules require, be "freely given."

Foman v. Davis, 371 U.S. 178, 182 (1962) (internal citations omitted).

The Third Circuit has held that "an amendment would be futile when 'the complaint, as amended, would fail to state a claim upon which relief could be granted.'" In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332 (3d Cir. 2002) (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997)); see also Warner-Lambert Co. v. Teva Pharmaceuticals, USA, 289 F. Supp. 2d 515, 544-45 (D.N.J. 2003), rev'd on other grounds, (quoting Wilson v. Am. Trans Air, Inc., 874 F.2d 386, 392 (7th Cir. 1989) (holding that "[a]n amendment is futile 'if the amended pleading could not survive a motion for summary judgment'")).  Because the Court finds, as explained below, that summary judgment would be appropriate on this claim, Plaintiff's motion to amend will be denied.

### 2.  Substantive evaluation of interference claim

The FMLA states, in pertinent part, that:

> [i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA].

29 U.S.C. § 2615(a)(1) (1993).  A failure to advise an employee of FMLA rights may be considered an actionable interference in violation of the FMLA.  Conoshenti, 364 F.3d at 144.  In order to bring an interference claim under the FMLA, an employee must show that a failure to notify her of FMLA rights rendered her unable to exercise those rights in a meaningful way, thereby causing an injury.  Id.  Further, the employee must show a prejudice as a result of the alleged interference.  Id.; see also Holpp v. Integrated Commc'ns. Corp., No. Civ. 03-3383, 2005 WL 3479682, at *7 (D.N.J. Dec. 20, 2005).

When the plaintiff has not presented any evidence that she could have made a different choice had the company informed her of her FMLA rights, she has not made a showing of prejudice.  Conoshenti, 364 F.3d at 145; Alifano v. Merck & Co., 175 F. Supp. 2d 792, 794 (E.D. Pa. 2001) (noting that courts have refused to recognize a valid claim for interference in the absence of any injury, including forfeiture of FMLA protections and granting motion to dismiss for failure to state a claim because the plaintiff alleged neither that the defendants denied her entitlement to FMLA leave nor failed to restore her to her previous position).  In Conoshenti, the Third Circuit recognized that the FMLA imposed a duty on an employer to advise an employee of her rights under the Act.  Id.  However, the court held that summary judgment was appropriate where the plaintiff would have been unprotected by the leave when he returned to work.  Id.  The court reasoned that there was an absence of evidence as to whether or not the plaintiff had been prejudiced.  Id.; cf. Nusbaum v. C.B. Richard Ellis, Inc., 171 F. Supp. 2d 377, 379-80,

385 (D.N.J. 2001) (denying motion to dismiss where employer refused to give employee information about FMLA rights, failed to designate leave as FMLA, and terminated employee during leave because if employee had been given proper notice she might have structured her leave in such a way that would have left her protected by the FMLA).

While Capilli, like the plaintiff in <u>Nusbaum</u>, was not denied FMLA protections outright, she was not given any materials or information regarding the FMLA, which violates the requirements of the regulations.[5]   However, she cannot show that she was prejudiced by this failure.  Insufficient notice is not enough to make a valid claim for interference under the FMLA.  Like the plaintiff in <u>Conoshenti</u>, Capilli returned to work voluntarily.  By her own admission, "[she] was able to come back to work," and she felt no pressure to return to work in October of 2003 except that Whitesell asked her for a doctor's note.[6]  (Dec. of Bruce Schlegel, Exh. 2–Capilli Tr., p. 333:21-24, 335:1-336:1.)

In response to the summary judgment motion, Plaintiff alleges that she was prejudiced as follows:

> Because she was not advised of her rights, [P]laintiff came back to work as soon as her tests were completed, feeling pressure to return because she knew her boss was covering for her, and also because of [D]efendant's various unfriendly communications to her concerning the time off she was taking.

---

[5]Moreover, Defendant failed to include information regarding FMLA leave and benefits in its company handbook, as required by 29 C.F.R. § 825.301(a)(1).

[6]An employer "may require that a request for leave under [the FMLA] be supported by a certification issued by the health care provider of the eligible employee . . . ."  29 U.S.C. § 2613 (1993).

When [P]laintiff returned to work, she continued to struggle with breathing difficulties, of which her supervisor was aware.  Plaintiff was to undergo physical therapy sessions prescribed by her neurosurgeon but was unable to do so, as Schlegel told her she could not leave her job during the day to attend therapy, and by the end of the day she was too exhausted to go. . . .

. . . If [P]laintiff had been aware of her rights, she could have stayed out on leave rather than return in October when she did, or alternatively, she could have structured an intermittent leave program which allowed her the flexibility she needed to work and still attend physical therapy and doctor's appointments or take a rest when her illness interfered with her work.

(Pl. Br., p. 16.)

However, Plaintiff's deposition testimony undermines these assertions.  First, Plaintiff testified that other than asking for a doctor's note, she was not pressured to return.  (Dec. of Bruce Schlegel, Exh. 2–Capilli Tr., p. 333:21-24, 335:1-336:1.)  In addition, she testified that no one told her she had to return to work by a certain date and that no one gave her a hard time about the return date she selected.  (Dec. of Bruce Schlegel, Exh. 2–Capilli Tr., p. 208:25-209:6.)  Second, Plaintiff testified that she was able to attend appointments with her doctors during the work day.  (Dec. of Bruce Schlegel, Exh. 2–Capilli Tr., p. 216:1-25.)  In addition, she did not explain during her deposition that she could not attend after-hours visits because of exhaustion; rather, she stated that this particular doctor did not have evening hours.  (Dec. of Bruce Schlegel, Exh. 2–Capilli Tr., p. 216:1-25.)  Moreover, she testified that Schlegel had been patient with everything–"as far as [the time she] was out of work for [her] hospitalization and then [her] subsequent disability and that [she] had missed time for that."  (Dec. of Bruce

18

Schlegel, Exh. 2–Capilli Tr., p. 182:4-16.)  Third, Plaintiff testified that when she

returned to work in October, she did so because she was able.  (Dec. of Bruce Schlegel,

Exh. 2–Capilli Tr., p. 333:21-24, 333:21-24.)

A subsequent, inconsistent affidavit does not create a genuine issue of material fact

upon which a court can rely to deny summary judgment.  In Martin v. Merrell Dow

Pharmaceuticals, Inc., the plaintiff, in her deposition, testified extensively about certain

issues.  851 F.2d 703, 705 (3d Cir. 1988).  However, the plaintiff, "fac[ing] almost certain

defeat in summary judgment," submitted an affidavit that "flatly contradicted no less than

eight of her prior sworn statements . . .," with no explanation for the contradictions.  Id.

The court held "that it was permissible for the district court to disregard the affidavit for

purposes of determining whether there was a material dispute of fact."  Id. at 706.  The

court reasoned that:

> [i]f a party who has been examined at length on deposition could raise an issue
> of fact simply by submitting an affidavit contradicting his own prior testimony,
> this would greatly diminish the utility of summary judgment as a procedure for
> screening out sham issues of fact.

Id. (quoting Perma Research & Dev. Co. v. Singer Co., 410 F.2d 572, 578 (2d Cir.

1969)).

Here, Plaintiff's deposition testimony is often at odds with her certification

statements.  In addition to the six contradictions outlined above, Plaintiff testified in her

deposition that while she needed surgery, she had not consulted with her surgeon and

"didn't (sic) know when [she] would be having this surgery," (Dec. of Bruce Schlegel,

Exh. 2–Capilli Tr., p. 183:8-25); however, in her certification, she stated that she

informed Schlegel that "she needed to have surgery on [her] throat some time in

December," (Pl. Statement of Mat. Facts, Exh. A–Certification of Capilli, ¶ 28).

Therefore, Plaintiff's subsequent certification, supplied in opposition to Defendant's

motion for summary judgment, cannot create a material dispute of fact.  Accordingly,

Plaintiff's motion to amend her complaint will be denied as futile.[7,8]

## D.  Plaintiff's Claims for Violations of the Americans with Disabilities Act ("ADA") and the New Jersey Law Against Discrimination ("NJLAD")

Counts Two and Three of Plaintiff's Complaint allege that Defendant terminated

Plaintiff on the basis of her disability in violation of the ADA and the NJLAD,

respectively.  Defendant argues that Plaintiff's claims must fail because she cannot

establish that Defendant had knowledge of her alleged disability.

The ADA provides that employers are prohibited from discriminating "against a

qualified individual with a disability because of the disability of such individual in regard

to . . . discharge of employees . . . and other terms, conditions, and privileges of

employment."  42 U.S.C. § 12112(a) (1991).  The NJLAD provides that "any unlawful

discrimination against any person because such person is or has been at any time disabled

or any unlawful employment practice against such person, unless the nature and extent of

---

[7]To the extent Plaintiff adequately plead interference in her original Complaint, Defendant's motion for summary judgment will be granted.

[8]In addition, for the reasons explained in this section, Plaintiff's Motion for Summary Judgment will be denied.

the disability reasonably precludes the performance of the particular employment" is prohibited.  N.J. STAT. ANN.§ 10:5-4.1 (2004).

Courts have held that in order for a plaintiff to establish a prima facie case of retaliation under either the ADA or the NJLAD, a plaintiff must show that 1) she is a disabled person within the meaning of the ADA; 2) she is otherwise qualified to perform the essential functions of the job; and 3) she has suffered an otherwise adverse employment decision as a result of discrimination.  Gaul v. Lucent Techs., Inc., 134 F.3d 576, 580 (3d Cir. 1998) (citing Shiring v. Runyon, 90 F.3d 827, 831 (3d Cir. 1996)).  The third prong of a retaliation case, the discrimination prong, comes in two forms: (1) subjecting the employee to an adverse employment action motivated by prejudice or fear; or (2) failing to provide a reasonable accommodation for a disability.  Bearley v. Friendly Ice Cream Corp., 322 F. Supp. 2d 563, 576 (M.D. Pa. 2004).

The Third Circuit has held that because disabilities are often unknown to the employer, "the plaintiff must demonstrate that the defendant employer knew of the disability to state a prima facie case of unlawful discharge."  Geraci v. Moody-Tottrup, Int'l, 82 F.3d 578, 581 (3d Cir. 1996) (citing Hedberg v. Indiana Bell Tel. Co., 47 F.3d 928, 932-33 (7th Cir. 1995)).  In Geraci, the plaintiff had told six out of twenty co-workers that she was pregnant.  Id. at 582.  The Third Circuit held that whether or not management knew of her pregnancy was sheer speculation because although she had told six people, she did not tell any of the defendant's management.  Id. (citing Hedberg, 47

21

F.3d at 932 (holding that "speculation about employer's knowledge of disability does not create a genuine issue of material fact; instead, it creates a false issue, the demolition of which is the primary goal of summary judgment")).

Similarly, in Grazioli v. Genuine Parts Co., 409 F. Supp. 2d 569, 586 (D.N.J. 2005), the court held that because the plaintiff failed to show any evidence that her employer perceived her as disabled or that she was substantially limited by her illness, summary judgment for the defendant was appropriate. The court reasoned that just because the plaintiff had taken a few short leaves of absence, but had not yet been diagnosed with Chronic Obstructive Pulmonary Disease, it could not infer that the defendant perceived her as disabled. Id.

Here, Plaintiff testified that she told Schlegel of her need to take time off in the future, but tried to keep talk about her illness to a minimum. (Dec. of Bruce Schlegel, Exh. 2–Capilli Tr., p. 209:13.) Although Richards, Whitesell's president, did speak with Schlegel before he terminated Plaintiff, there is no basis to conclude that he terminated her on the basis of her disability. Like in Geraci, it is sheer speculation that Richards had knowledge of Plaintiff's disability. For example, Richards testified, and Plaintiff does not dispute, that he did not have knowledge of any disability that Plaintiff may have had. (Dec. of Bruce Schlegel, Exh.2–Capilli Tr., p. 304:1-305:7.)

Moreover, while Plaintiff testified that she did tell a few co-workers that she had trouble breathing and was sick, (Dec. of Bruce Schlegel, Exh. 2–Capilli Tr., p. 197:11-

12), similar to the plaintiff in Geraci, Richards filed a declaration that he did not have

knowledge of her disability and she has failed to present any evidence to the contrary.[9]

Plaintiff took a short leave of absence, and upon her return did not notify anyone of the

details of her illness.  Similar to Grazioli, Plaintiff has not produced any evidence that her

supervisor perceived her as being disabled.  Therefore, no genuine issue of material facts

exists as to Defendant's knowledge of Plaintiff's disability.  Accordingly, summary

judgment will be granted as to Counts Two and Three.

**E.  Plaintiff's Pierce Claim**

Count Four of Plaintiff's Complaint alleges that "Defendant's wrongful

termination of Plaintiff in violation of the FMLA and NJLAD is contrary to a clear

mandate of New Jersey public policy."  (Complaint, ¶ 24.)  Defendant argues that this

constitutes a claim under Pierce v. Ortho Pharmaceutical Corp., 417 A.2d 505 (N.J.

1980), which is preempted by Plaintiff's statutory claims.  Plaintiff argues that the

elements of a Pierce claim are satisfied here and does not confront the issue of

preemption.  Defendant is correct.

---

[9]While it is true that Richards knew Plaintiff had taken health-related leave in September/October, by Plaintiff's own admission, there is no reason to believe that he knew she had a disability and to conclude such knowledge would be pure speculation. See Grazioli, 409 F. Supp. 2d at 586 (holding that there was no basis to conclude that the defendant perceived the plaintiff as disabled just because she had taken several leaves of absence).  Moreover, the knowledge required here–that plaintiff has a disability–is different from the knowledge required for the FMLA retaliation claim–that plaintiff needs to take protected leave.

New Jersey law provides that "an employee has a cause of action for wrongful discharge when the discharge is contrary to a clear mandate of public policy." <u>Id.</u> at 512. "The sources of public policy include legislation; administrative rule[s], regulations or decisions; and judicial decisions." <u>Id.</u>  However, when "the sources of public policy [upon which a defendant relies] are coterminous with his statutory claims, he cannot advance a separate common law public policy claim." <u>Lawrence v. Nat'l Westminster Bank New Jersey</u>, 98 F.3d 61, 73 (3d Cir. 1996) (citing <u>Catalane v. Gillian Instrument Corp.</u>, 638 A.2d 1341, 1349 (N.J. Super. Ct. App. Div. 1994)).  Therefore, Plaintiff's claim under the <u>Pierce</u> doctrine is preempted because the sources of public policy supporting it are coterminous with her NJLAD claim.  Accordingly, Count Four of Plaintiff's Complaint will be dismissed.

## **CONCLUSION**

Based on the foregoing, Defendant's Motion for Summary Judgment [10] will be granted in part and denied in part.  Plaintiff's Motion for Summary Judgment [12] will be denied.

An appropriate Order will issue this date.


/S/ Joseph H. Rodriguez
JOSEPH H. RODRIGUEZ
United States District Judge

DATED: June <u>21</u>, 2006

24